**In re Ellis R. LEWIS.**

**Bankruptcy No. 97–11602 S.**

United States Bankruptcy Court,
W.D. Arkansas.,
El Dorado Division.

Nov. 23, 1998.

Francis Gowen, Shreveport, LA, for Mrs. Lewis.

Robert L. Depper, El Dorado, AR, for debtor.

David D. Coop, North Little Rock, AR, Chapter 13 Trustee.

## *ORDER*

MARY DAVIES SCOTT, Bankruptcy Judge.

This case presents a particularly egregious example of a debtor abusing the bankruptcy process in order to avoid child and spousal

support obligations imposed by a state court. The debtor not only sought to avoid the obligations imposed by the state court, sought to evict his former spouse (and therefore also his child) from the family residence through the plan, purloined the mortgage payments sent to him by the former spouse, causing a foreclosure action, but he also filed, under penalty of perjury, contradictory documents with the bankruptcy court and the Internal Revenue Service.

Since the inception of this bankruptcy case on December 30, 1997, the debtor has filed numerous plans. Objections have been filed with regard to each. The matters pending before the court include three objections to the plan and modified plan, filed by Patricia Lewis, the debtor's former spouse. Thus, before the Court are the following matters:

1. The Objection to Modified Plan and for Relief from Stay, filed by Patricia Lewis on May 22, 1998;

2. The Objection to the Modified Plan or in the Alternative, Motion to Convert filed by Patricia Lewis, on June 8, 1998;

3. The Objection to the Claim of Patricia Lewis, filed by the debtor on August 31, 1998; and

4. The Objection to the Third Modification of Plan filed by Patricia Lewis on August 31, 1998.

In September 1997, the 26th Judicial District Court in Bossier Parish, Louisiana issued an order both awarding the use of the marital home to Patricia Lewis and requiring that the debtor pay the mortgage as a form of alimony. In February, following issuance of the formal decree of divorce, the court awarded child and spousal support to Patricia Lewis. Ellis Lewis was required to pay a sum certain. for child support, to pay the mortgage on the family residence as a form of alimony, and to pay to the debtor a portion of his retirement benefits. Patricia Lewis was to pay one-half of the mortgage by forwarding funds to the debtor, who was then obligated to forward the entire mortgage payment to the mortgagee. The debtor paid nothing on the child support or the retirement funds. He converted Patricia Lewis' money to his own use by failing to forward the funds to the mortgage company. Patricia Lewis learned that house payments were not being made when mortgage foreclosure proceedings were instituted by the mortgagee. In the summer of 1997, Ellis Lewis was incarcerated for contempt of court for failure to comply with his support obligations. He was released from jail only when his current spouse paid $5,000 of the arrearage owed on his obligations.

On November 28, 1997, Ellis Lewis filed a voluntary chapter 13 petition in bankruptcy. He scheduled his obligations to Patricia Lewis as $7,664 unsecured and $1,728.15 priority for alimony.[1] Each of his successive plans proposed to pay $28.80 per month on these obligations. He did propose to pay for his BMW and Crown Victoria LTD, however. One of the plans, subsequently modified, improperly provided that upon confirmation, "Patricia A. Lewis will move off of the realty to allow Ray Lewis [2] to move upon the realty."[3]

During the pendency of these proceedings involving multiple plans, on April 15, 1998, the debtor signed his federal income tax return for the 1997 taxable year,[4] claiming an alimony deduction from adjusted gross income in the amount of $3,689. This is the precise sum of the military retirement awarded to Patricia Lewis in the order of February 6, 1997. This statement to the Internal Revenue Service directly contradicts his statement in the bankruptcy schedules filed four months prior to the filing of the tax return and his testimony in bankruptcy

1. Although he indicated that his current wife is employed, the debtor failed to list any of her income or expense information.

2. Ray Lewis is not the name of the parties' child and is the debtor.

3. Some of the plans also provided for surrender of debtor's interest in the Louisiana residence. While the debtor may surrender his interest through the plan, it does not, as debtor may believe, relieve him of any obligations to make mortgage payments under the state court decrees.

4. Wisely, the current wife did not sign a joint return with the debtor. The debtor filed married, filing separately.

court, made six months after the filing of the tax return. In addition to committing perjury with regard to the support nature of these payments, the debtor failed to file federal and state income tax returns for various years and was accordingly required to file those returns. Plan modifications were thereafter required because of the priority tax debts which were found to exist.

### Bad Faith

 The evidence of the debtor's bad faith, not only in filing the case, but also in proposing his plans, is overwhelming. It is clear from the content of the plan and the schedules that the debtor's sole motive in filing this case was to circumvent the orders of the state court. The debtor absconded with one half of the mortgage payments from Patricia Lewis and failed to remit his share to the mortgage company. These actions not only constituted theft, they jeopardized his former spouse's and their child's home by causing a foreclosure proceeding. Having been caught, the debtor then, in one of the more telling aspects of this case, attempted to evict his former wife and child from the marital residence through the plan. Although he now asserts, with the exception of the child support payments, that the payments he was obligated to make are not support, this is clearly untrue. The Court believes Patricia Lewis and finds Ellis Lewis to be incredible. Indeed, the documents prove him thus. Despite his assertions in the schedules and in this Court, in the interim he filed a federal tax return, under penalty of perjury, asserting that the payments he was required to make on the retirement benefits constituted alimony in order to avail himself of a deduction which would lessen his tax liability. The Court finds that all of the payments Ellis Lewis was required to pay to Patricia Lewis, despite their characterization in documents or by the debtor, *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1057 (8th Cir.1983), are in the nature of support. Debtor's characterizations of the debts and his plan proposals reveal a desperate attempt to contravene the decision of the state court that finally incarcerated him for contempt for the same behavior and are made in bad faith such that the plan may not be confirmed. The Bankruptcy Code and this court can provide no refuge or a fresh start. The breathing space is reserved for honest debtors.

### The Proof of Claim

The debtor filed an objection to the amount of Patricia Lewis' proof of claim.[5] At the hearing held on October 13, 1998, the debtor also asserted for the first time that Patricia Lewis' claim was late-filed and therefore could not be allowed.[6] Proofs of claim were required to be filed in this case no later than April 27, 1998. Patricia Lewis filed her claim in the amount of $23,849.40 on May 27, 1998. An Order was entered on August 17, 1998, allowing the claim. The debtor has never moved to set aside this Order or formally object to the claim as untimely. It was not until opening statement, on October 13, 1998, nearly five months after the filing of the proof of claim, that debtor raised the untimeliness of the proof of claim as an issue.

 Section 501 of the Bankruptcy Code provides for the filing of proofs of claim. Section 502 addresses the allowance and disallowance of claims. Under section 502(a), a claim is "deemed allowed" if no one objects to a proof of claim; the proof of claim is *prima facie* evidence of the claim or inter-

---

5. The debtor also asserts that one of the judgments, entered by the state court after the filing of the bankruptcy case, is void as a violation of the stay. This contention is not true since it was a support obligation and thus not a violation of the automatic stay. 11 U.S.C. § 362(b)(2)(A)(ii). Moreover, the order complained of merely reduced to judgment an existing debt.

6. The legal effect of having a claim disallowed merely means that Patricia Lewis would not be entitled to share in the distribution through the plan. Disallowance of the claim does not elimi-

nate the debt or the obligation to pay it. Indeed, inasmuch as the debts are in the nature of support, the obligation to pay the current as well as past due support debts continues to accrue. Since the debts are nondischargeable, disallowance of the claim serves no person's interest, least of all, the debtor. The fact that debtor seeks to avoid payment of these obligations through the plan, despite their nondischargeable nature and to his own detriment, is further evidence of his bad faith.

est. Disallowance of a claim affects whether the holder of the claim will receive a distribution in the case, but does not affect the discharge of claims. Under section 502(b), upon objection, the court allows the claim unless one of the paragraphs of section 502(b) applies. Section 502(b)(9), which is applicable in chapter 13 cases, provides that the court shall allow a claim except to the extent that—

> (9) proof of such claim is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section 726(a) of this title or under the Federal Rules of Bankruptcy Procedure....

Thus, section 502(b)(9) sets forth the general rule that a claim is allowed unless it is untimely. However, section 502(b)(9) also contains an exception for those debts described in section 726(a)(1). Section 726(a)(1) provides for distribution to priority creditors, including support obligations under section 507(a)(7) *whether or not the claim was timely filed* so long as the claim is filed before the trustee commences distribution. *See generally United States v. Vecchio (In re Vecchio )*, 20 F.3d 555 (2d Cir.1994). Accordingly, the court is not required to disallow an untimely proof of claim for a priority debt, even in the chapter 13 context. *United States v. Waindel (In re Waindel )*, 65 F.3d 1307, 1309–10 & n. 7 (5th Cir.1995). Since the debtor's entire obligation to Patricia Lewis is in the nature of support, it is a priority debt under section 507(a)(7) and is not subject to disallowance merely because it was untimely filed.

The Court also finds the objection as to the amount of the proof of claim to be without merit. Patricia Lewis filed a proof of claim in the amount of $23,849.40 but it was she who demonstrated at trial that she holds a priority claim for various support obligations in the amount of $19,034.60, thus amending her own claim. The debtor's objection was to virtually all of her claim and amounted to nothing more than an attempt to relitigate issues long ago decided by the state court. Accordingly, the objection to Patricia Lewis' proof of claim is overruled, and the claim is allowed to the extent of $19,034.60.

*The Appropriate Relief*

Patricia Lewis has requested relief from stay to proceed in state court and conversion of the case to chapter 7.[7] In light of the findings of bad faith and the obvious and continuing need for state court supervision of the debtor's support obligations, both remedies are appropriate.

**ORDERED** as follows:

1. The Objection to Modified Plan and for Relief from Stay, filed by Patricia Lewis on May 22, 1998, is Sustained as to the objection and Granted as to the Motion for Relief from Stay.

2. The Objection to the Modified Plan or in the Alternative, Motion to Convert filed by Patricia Lewis, on June 8, 1998, is Sustained as to the objection and Granted as to the Motion to Convert. This case is hereby converted to chapter 7 of the Bankruptcy Code.

3. The Objection to the Claim of Patricia Lewis, filed by the debtor on August 31, 1998, is overruled in part and sustained in part. Patricia Lewis' priority claim in the amount of $19,034.60 is allowed; and

4. The Objection to the Third Modification of Plan filed by Patricia Lewis on August 31, 1998, is Sustained.

**IT IS SO ORDERED.**

---

7. At the conclusion of the hearing on October 13, 1998, the Court issued findings and conclusions on the record pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure. In light of the overwhelming evidence of bad faith, the Court directed that the case be dismissed. 11 U.S.C. § 1307, however, permits dismissal only upon request of a party in interest and after notice and hearing. The Court does not have the authority to *sua sponte* direct dismissal of a chapter 13 case without notice and hearing when the determination regarding dismissal is based on a determination of the merits of a chapter 13 plan. *In re Terry*, 630 F.2d 634 (8th Cir.1980); *Noreen v. Slattengren*, 1991 WL 472667 (D.Minn. Nov.18, 1991), *aff'd*, 974 F.2d 75 (8th Cir.1992). *See In re Meints*, 222 B.R. 870 (D.Neb.1998) (bankruptcy court has authority to dismiss chapter 13 case *sua sponte* for grounds other than those going to merits of the plan).